BREAUX, C. J.
Plaintiff, owner of 180 lots which he holds for sale in the city of Shreveport, claimed damages of defendant, and asks for an injunction restraining the defendant from permitting the escape of oil from its tanks and other receptacles, which he avers is prejudicial to his interest and damaging to his property.
Plaintiff’s lots are contiguous to and in the vicinity of defendant’s shops, roundhouse, and other property, in the city before mentioned.
Seventy-three of plaintiff’s lots are at the bottom of a depression through which there is a large drain or ravine, in which run four or five feet of water in depth, by a few feet in width. The remaining lots of the 180, to wit, 107, are on the adjacent table lands, not far from the ravine. The water from the plateau runs down through the drain. Some of the witnesses testified that there was something attractive about these lots at this place before the oil complained of began to flow through the drain.
They say that this oil poisoned the fish in the stream and killed the trees on its way down to a lake known as Cross. The flowing oil sometimes is on fire.
And it seems that a sidewalk also was destroyed by fire, communicated by the oil burning. The drain, filled with water and oil, sometimes overflows.
Plaintiff assesses his loss because of the depreciation in the market value of the land, and other damages in the sum of $5,000, for which he asks judgment.
Plaintiff fixes the depreciation in the value of the lot through which the ravine runs at from 40 to 75 per cent. He says that only one person approached him since the date that the oil began to flow on his lots with a view of buying a lot, and that he did not buy, although the price was put down as low as $75, lots in the valley which he was selling at $175 before the oil came down upon his land.
We gather from the testimony that the offending oil committed some damage, and that it interfered with the sale of plaintiff’s lots.
The amount of defendant’s liability is not easily arrived at.
• The profit which plaintiff could have made on his sale or the difference in price, if there had been no escaping oil, opens a broad field for speculative inquiry.
There is no certainty that the fire was set by any one for whose acts the company was responsible.
There was negligence in allowing the great volume of oil to escape from defendant’s tanks and other receptacles. It was also negligence on its part not to have stopped the escape of the oil.
Defendant’s tanks contain thousands of *96 gallons of oil. The testimony shows that at one time about 17,000 gallons leaked out and on to and down plaintiffs valley. After it had taken fire, the grass, leaves, and the trees were destroyed.
The invasion of plaintiffs rights by defendant’s oil is a good cause of complaint against its owner.
Whilst we must give • expression of disapproval touching defendant’s dilatoriness in view of this escaping oil, we do not see our way clear to a decision allowing thousands of dollars.
The asserted loss of 50 per cent, on some of the lots and 25 per cent, on others suggests an uncertain and problematical valuation, although made with the utmost sincerity.
It is averred that the difference in the price of these lots before the nuisance and the price after the oil began to flow, as before stated, is an absolute and final loss of principal.
We would agree with this view if the loss were permanent; but it is a temporary depreciation in value.
It being temporary, defendant would be rendered liable for something not lost or destroyed so far as we can determine.
Plaintiff would recover damages and retain the property. The value of the property may be greater than ever before.
In fixing damages on sales which plaintiff says he failed to make, we would have to assume that he would have sold a certain number of lots at a given price, lots'which he did not sell, but which he holds for sale.
There is no good basis upon which to fix an amount. There is no regular market value for such property. There are city lots that sell slowly. One year they may be in demand and another year they are not.
We have considered all the elements of damages, and have concluded to amend the judgment and allow less than was allowed.
It is therefore ordered, adjudged, and decreed that the judgment is amended by reducing the amount from $1,000 to $500, and interest on the latter amount, as heretofore allowed.
Appellee is condemned to pay the costs of appeal.